UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

|  |  |
|---|---|
| HERMA BARBARA MEDINA REYNA, | CIV. NO. 19-00248 LEK-RT |
| Plaintiff, | |
| vs. | |
| PNC BANK, N.A.; ET AL., | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS
PNC BANK, NATIONAL ASSOCIATION AND MORTGAGE ELECTRONIC
REGISTRATION SYSTEM INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter arises out of the foreclosure of real
property owned by *pro se* Plaintiff Herma Barbara Medina Reyna
("Plaintiff" or "Reyna") in Makawao, Maui County, State of
Hawai`i ("the Subject Property"). See Amended Complaint, filed
7/12/19 (dkt. no. 35), at ¶¶ 8, 23. Plaintiff filed her action
against several defendants – Defendants PNC Bank, N.A. ("PNC");
Wilmington Trust, National Association, Not in Its Individual
Capacity But Solely as a Trustee under the Greenwich Investors
XL Pass-Through Agreement Dated as of March 1, 2012
("Wilmington"); Mortgage Electronic Registration Stems, Inc.
("MERS"); and all unknow persons claiming any legal or equitable
right, title, estate, lien, or interest in the Subject Property
adverse to Plaintiff's title thereto ("Unknown Interest
Defendants" and, all collectively, "Defendants"). [Id. at ¶¶ 1-

4.]  To date, only PNC and MERS have filed answers to the

Amended Complaint.  See MERS's answer to the Amended Complaint,

filed 7/29/19 (dkt. no. 39); PNC's answer to the Amended

Complaint, filed 7/29/19 (dkt. no. 40).  No other parties have

filed a response or otherwise appeared.

PNC and MERS, in their Motion for Judgment on the

Pleadings, filed on November 4, 2019 ("Motion"), seek dismissal

of all claims asserted against them on the basis that

Plaintiff's claims are barred under the Rooker-Feldman doctrine[1]

and by the res judicata doctrine, and because Plaintiff fails to

state any viable claims.  See Mem. in Supp. of Motion (dkt.

no. 44-1) at 1.  They further submit that any amendment would be

futile to cure any defects in the Amended Complaint, and thus

dismissal must be with prejudice.  On November 14, 2019,

Plaintiff filed a document that is construed as her memorandum

in opposition to the Motion ("Memorandum in Opposition"), and

PNC and MERS filed their reply in support of the Motion

("Reply") on January 10, 2020.  [Dkt. nos. 48, 53.]  Plaintiff

filed a document that this Court ruled will be considered as

Plaintiff's response to the Reply ("Surreply").  [Surreply,

---

[1] The Rooker-Feldman doctrine was established by the United
States Supreme Court in Rooker v. Fidelity Trust Co., 263 U.S.
413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462
(1983).

filed 1/21/20 (dkt. no. 54); Minute Order, filed 1/23/20 (dkt. no. 55).]

For the reasons set forth below, all of Plaintiff's claims, except for Count II, Count XII, and Count XIII, are dismissed with prejudice as to both PNC and MERS.  Count II is dismissed without prejudice and **with leave to amend by no later than June 10, 2020 as to PNC and MERS**; Counts XII and XIII are dismissed with prejudice as to MERS only and without prejudice and **with leave to amend by no later than June 10, 2020 as to PNC.**  Failure to file a second amended complaint by that deadline will result in dismissal of the remaining claims with prejudice.

<u>**BACKGROUND**</u>

The procedural background of the instant case involves Plaintiff's original Complaint, [filed on 5/13/19 (dkt. no. 1),] which was superseded by her Amended Complaint.  Plaintiff alleges the following claims:  Negligence against the Foreclosing Defendants ("Count I");[2] Fraud Against the Foreclosing Defendants ("Count II"); Fraud against all Defendants ("Count III"); a claim seeking to set aside the commissioner's sale of the Subject Property ("Count IV"); a

---

[2] Plaintiff refers to PNC, Wilmington, and MERS as "the Foreclosing Defendants."  [Complaint at ¶ 6; Amended Complaint at ¶ 6.]

claim against the Foreclosing Defendants seeking to void or cancel the commissioner's Deed upon Contingent Sale ("Count V"); a claim against the Foreclosing Defendants seeking to void or cancel the Assignment of Deed of Trust ("Count VI"); wrongful foreclosure against the Foreclosing Defendants ("Count VII"); breach of contract against the Foreclosing Defendants ("Count VIII"); breach of the implied covenant of good faith and fair dealing against the Foreclosing Defendants ("Count IX"); unjust enrichment against the Foreclosing Defendants ("Count XI"); violation of California Business and Professions Code § 17200, *et seq.*, against the Foreclosing Defendants ("Count XII"); quiet title as to PNC and the Unknown Interest Defendants ("Count XII"); slander of title against the Foreclosing Defendants ("Count XIII"); and violations of the Racketeer Influenced and Corrupt Organization ("RICO") Act ("Count XIV"). [Amended Complaint at ¶¶ 27-107.]

The factual background of this matter begins with Plaintiff's loan from Meridian Financial Network Inc. ("Meridian") on May 21, 2007, for which "Plaintiff made, executed, and delivered to MERS, as nominee for Meridian, . . . a mortgage recorded in the Bureau of Conveyances . . . on May 30, 2007" ("Mortgage"). [Mem. in Supp. of Motion at 2; Motion, Decl. of Ryan B. Kasten ("Kasten Decl."), Exh. 1 (Mortgage).] The mortgage encumbered the Subject Property.

[Kasten Decl., Exh. 1.]  Subsequently, MERS assigned the
Mortgage to PNC, and this assignment was recorded in the Bureau
of Conveyances on July 13, 2011.  [Id., Exh. 2 (Assignment of
Mortgage ("Assignment")).].  A foreclosure action was instituted
by PNC against Reyna on April 29, 2015 in a state circuit court
("Foreclosure Action"),[3] and Reyna filed her response on
September 16, 2016.  [Id., Exh. 3 (Reyna's answer to the amended
complaint in the Foreclosure Action).]  Ultimately, on July 20,
2017, the state court issued: an order granting summary judgment
in favor of PNC, with an interlocutory decree of foreclosure
("Foreclosure Decision"); and a judgment pursuant thereto
("Foreclosure Judgment").  [Id., Exh. 4 (Foreclosure Decision),
Exh. 5 (Foreclosure Judgment).]  Reyna filed an appeal, which
was dismissed as untimely.  See PNC Bank, N.A. v. Reyna, NO.
CAAP-18-0000022, 2018 WL 3062466 (Hawai`i Ct. App. June 21,
2018), recon. denied, 2018 WL 3408082 (July 13, 2018).
Plaintiff subsequently filed the instant action in this district
court.

## STANDARDS

## I.  Fed. R. Civ. P. 12(c)

Rule 12(c) states: "After the pleadings are closed-but
early enough not to delay trial-a party may move for judgment on

---

[3] The Foreclosure Action is PNC Bank, National Ass'n v.
Reyna, et al., Civil No. 15-1-0224(3).

the pleadings." Fed. R. Civ. P. 12(c).  The allegations of the nonmoving party are accepted as true, while the allegations of the moving party that have been denied are assumed to be false. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990).  If, when the pleadings are so construed, the moving party is entitled to judgment as a matter of law, the Rule 12(c) motion will be granted.  Rubin v. United States, 904 F.3d 1081, 1083 (9th Cir. 2018) (citing Fajardo v. Cty. of Los Angeles, 179 F.3d 698, 699 (9th Cir. 1999)).  The standards applicable to a Fed. R. Civ. P. 12(b)(6) motion also apply to a Rule 12(c) motion because the two motions are "functionally identical."  Gregg v. Hawai`i, Dep't of Pub. Safety, 870 F.3d 883, 887 (9th Cir. 2017) (citation and quotation marks omitted). Thus, "[a]s with a motion to dismiss, a claim may survive a motion for judgment on the pleadings if the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Adon Constr. Inc. v. Renesola Am. Inc., CIVIL NO. 16-00568 JAO-WRP, 2019 WL 2236073, at *2 (D. Hawai`i May 23, 2019) (some alterations in Adon Constr.) (some internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

While taking account of material outside of the complaint can convert the motion for judgment on the pleadings into a motion for summary judgment, a court may take judicial

notice of "matters of public record" pursuant to Rule 201, Federal Rules of Evidence, without converting the motion.[4]  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (discussing judicial notice in the context of a motion to dismiss), *cert. denied sub nom.*, Hagan v. Khoja, 139 S. Ct. 2615 (2019).  However, a court cannot take judicial notice of disputed facts within those public records.  Id.

A complaint need not include detailed facts to survive dismissal.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, in providing grounds for relief, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id.; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." (citation omitted)).

---

[4] PNC and MERS have requested that the Court take judicial notice of the documents attached to the instant Motion as exhibits which pertain to the Foreclosure Action in state court. [Kasten Decl. at ¶ 10.]  A court may take judicial notice of facts "not subject to reasonable dispute because" either: they are "generally known within the trial court's territorial jurisdiction;" or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The Court will take judicial notice of the exhibits, as they are matters of public record, and Plaintiff does not dispute that the exhibits are accurate versions of those documents.  See Rule 201(b)(2).

## II.  Fed. R. Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This district court has set forth the type of particularity required:

> In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. [In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc)] (citation and quotation signals omitted).[5]  Where there are multiple defendants, Plaintiffs cannot "lump multiple defendants together" and instead must "differentiate their allegations [between defendants]." Destfino v. Kennedy, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); Walling v. Beverly Enter., 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).

Menashe v. Bank of New York, 850 F. Supp. 2d 1120, 1129 (D. Hawai`i 2012) (some alterations in Menashe).

## III.  *Pro Se* Status

---

[5] In re GlenFed has been superseded by statute on other grounds.  See, e.g., Wilson v. Gov't Nat'l Mortg. Ass'n, Civ. No. 18-00048 JMS-KSC, 2018 WL 2293929, at *2 (D. Hawai`i May 18, 2018).

Plaintiff is proceeding *pro se*, and therefore her Amended Complaint and other filings must be construed liberally, and her claims may only be dismissed if it is beyond doubt that she can prove no set of facts which would entitle her to relief. See Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) (citation omitted). "Dismissal of a *pro se* complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Id. (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 1988)). Leave to amend, however, is not limitless and where a plaintiff (as here) has previously amended a complaint, a district court has discretion to deny leave to amend:

> Normally, when a viable case may be pled, a district court should freely grant leave to amend. Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002). However, "liberality in granting leave to amend is subject to several limitations." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987)). Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay. Id. Further, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Id. (citing Leighton, 833 F.2d at 186; Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir. 1980)).

Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (alteration in Cafasso).

## DISCUSSION

I. *Rooker-Feldman* Doctrine

This Court is without jurisdiction to decide this matter if Plaintiff's action is essentially an appeal from the state court's final decision in her foreclosure action:

> The Rooker-Feldman doctrine takes its name from Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). Under Rooker-Feldman, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court. The United States Supreme Court is the only federal court with jurisdiction to hear such an appeal. Rooker-Feldman is a statute-based doctrine, based on the structure and negative inferences of the relevant statutes rather than on any direct command of those statutes. See, e.g., In re Gruntz, 202 F.3d 1074, 1078 (9th Cir. 2000) (en banc) ("Rooker-Feldman is not a constitutional doctrine. Rather, the doctrine arises out of a pair of negative inferences drawn from two statutes: 28 U.S.C. § 1331 . . . and 28 U.S.C. § 1257 . . . .").

Noel v. Hall, 341 F.3d 1148, 1154-55 (9th Cir. 2003) (alterations in Noel). Further, a federal district court must also "refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." Id. at 1158.

Thus, to the extent any of the claims in Plaintiff's Amended Complaint seek reversal or an appeal of the Foreclosure Decision or the Foreclosure Judgment, such claims must be

10

dismissed.  In this context, the following claims directly

challenge the Foreclosure Decision and Foreclosure Judgment:

-Count IV (set aside the commissioner's sale) avers that "[t]he
    Foreclosing Defendants never had the authority to
    foreclose . . . .  Thus, Defendant's pending wrongful non-
    judicial foreclosure sale is void ab initio." [Amended
    Complaint at ¶ 46.]

-Count V (void/cancel the commissioner's deed) states that,
    "[a]lthough the Trustee's deed upon sale might appear valid
    on its face, it is invalid." [Id. at ¶ 50]

-Count VI (void/cancel Assignment) alleges that "[t]he
    Assignment of the Deed of Trust is invalid, . . . MERS did
    not have standing or the legal authority to assign the deed
    of trust." [Id. at ¶ 53.[6]]

-Count VIII (breach of contract) states that "[t]he Foreclosing
    Defendants breached . . . by failing to apply the payments
    made by Plaintiff from June, 20007 [sic] to 2013 to
    Plaintiff's loan, the result of which led to . . . eventual
    wrongful foreclosure . . . ." [Id. at ¶ 64.]

These four causes of action essentially seek to undo the

Foreclosure Decision (that is, to reverse the Foreclosure

Judgment entered in the Foreclosure Action).  Because Plaintiff

sought to appeal the Foreclosure Judgment, and her appeal was

dismissed as untimely, this state court judgment is a final

judgment.  Plaintiff is thus barred from seeking a direct appeal

to this Court on these claims.  Judgment on the pleadings in

favor of PNC and MERS is therefore merited as to Count IV,

---

[6] Although Plaintiff refers to an "Assignment of the Deed of
Trust," not the "ASSIGNMENT OF Mortgage," it appears from the
text of paragraph 53 that Count VI addresses the "ASSIGNMENT OF
Mortgage."  Compare Amended Complaint at ¶ 53, with Kasten
Decl., Exh. 2 (Assignment) at 1 (emphasis in original).

Count V, Count VI, and Count VIII, and these claims are dismissed.  Further, because any amendment would be futile, the dismissal of these claims is without leave to amend.  <u>Cervantes v. Countrywide Home Loans, Inc.</u>, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." (citation omitted)).

The remaining claims, however, do not directly challenge the Foreclosure Judgment and, although related to, they are not "inextricably intertwined" with the issues in the Foreclosure Action, and therefore they do not trigger preclusion under the <u>Rooker</u>-<u>Feldman</u> doctrine.  For instance, Count I alleges a claim for negligence and contends that MERS "had a duty to exercise reasonable care and skill to maintain proper and accurate loan records" and breached that duty, which resulted in a wrongful foreclosure on the Subject Property. [Amended Complaint at ¶¶ 28-29.]  This claim does not seek to undo the Foreclosure Judgment, but rather seeks redress for MERS's alleged negligence, which allegedly culminated in the Foreclosure Judgment.  Thus, it is an independent claim not precluded by the <u>Rooker</u>-<u>Feldman</u> doctrine, "though similar or even identical to issues aired in state court, [but] was not the subject of a previous judgment by the state court."  <u>Cooper v.</u>

12

Ramos, 704 F.3d 772, 778 (9th Cir. 2012) (citation omitted).
Similarly, the Rooker-Feldman doctrine does not apply to these
claims: Count II (fraud against the Foreclosing Defendants);
Count III (fraud against all Defendants); Count VII (wrongful
foreclosure); Count IX (breach of the implied covenant of good
faith and fair dealing); Count X (unjust enrichment); Count XI
(violation of California Business and Professions Code § 17200,
*et seq.*); Count XII (quiet title); Count XIII (slander of
title); and Count XIV (violations of RICO Act).

## II.   *Res Judicata* Doctrine

          PNC and MERS also assert that the *res judicata*
doctrine precludes Plaintiff's claims based on the Foreclosure
Judgment.  The Court agrees.  For the same reasons discussed as
to the Rooker-Feldman doctrine, judgment on the pleadings in
favor of PNC and MERS is therefore merited as to Count IV,
Count V, Count VI, and Count VIII, but not the remaining claims.
Likewise, these dismissals are with prejudice because any
amendment would be futile.

## III. Failure to State a Claim

### A.   Count I (Negligence)

          Count I alleges a claim for negligence and contends
that MERS "had a duty to exercise reasonable care and skill to
maintain proper and accurate loan records" and breached that
duty, which resulted in a wrongful foreclosure on the Subject

13

Property.  [Amended Complaint at ¶¶ 28-29.]  She also generally

alleges that, "[a]s a direct and proximate result of the

negligence and carelessness of the Foreclosing

Defendants . . . , Plaintiff suffered . . . damages."  [Id. at

¶ 30.]  Plaintiff cannot maintain a negligence claim against PNC

or MERS:

> Under Hawaii law, in order to establish a
> negligence claim, Plaintiffs must demonstrate a
> duty, a breach of that duty, legal causation, and
> actual injury.  Takayama v. Kaiser Found. Hosp.,
> 82 Hawai`i 486, 498-99, 923 P.2d 903, 915-16
> (1996); Kaho`ohanohano v. Dep't of Human Servs.,
> 117 Hawai`i 262, 287 n.31, 178 P.3d 538, 563 n.31
> (2008); Pagano v. OneWest Bank, F.S.B., Civ.
> No. 11-00192 DAE-RLP, 2012 WL 74034, at *4 (D.
> Hawai`i Jan. 10, 2012).
>
> This district court has frequently
> recognized the principle that lenders generally
> do not owe their borrowers a duty of care
> sounding in negligence.  See, e.g., McCarty v.
> GCP Mgmt., LLC, Civ. No. 10-00133 JMS-KSC, 2010
> WL 4812763, at *6 (D. Hawai`i Nov. 17, 2010); see
> also Nymark v. Heart Fed. Sav. & Loan Ass'n, 231
> Cal. App. 3d 1089, 283 Cal. Rptr. 53, 56 (Cal.
> Ct. App. 1991).  Further, this district court has
> recognized that a loan servicer does not owe a
> duty of care to a borrower in a loan it services,
> unless the loan servicer's activities exceed its
> traditional role.  See, e.g., Vertido v. GMAC
> Mortg. Corp., Civ. No. 11-00360 DAE-KSC, 2012 WL
> 139212, at *11 (D. Hawai`i Jan. 17, 2012) (citing
> Shepherd v. Am. Home Mortg. Servs., Inc., Civ.
> No. 2:09-1916 WBS GGH, 2009 WL 4505925, at *2
> (E.D. Cal. Nov. 20, 2009)).

Crilley v. Bank of Am., N.A., Civil No. 12-00081 LEK-BMK, 2013

WL 1767704, at *5 (D. Hawai`i Apr. 24, 2013).  Plaintiff was

liable for a Note, which was secured by the Mortgage, and this

Mortgage had been assigned by MERS to PNC, and Plaintiff was found in default under the terms of the Note and Mortgage. See Kasten Decl., Exh. 4 (Foreclosure Decision) at ¶¶ 5-7, 10. Therefore, as against PNC as lender and MERS (because Plaintiff has alleged MERS was a loan servicer), Count I must be dismissed for failure to state a claim and, because amendment would be futile, it is dismissed with prejudice.

**B.   Count II (Fraud Against the Foreclosing Defendants)**

Plaintiff alleges fraud against the FPNC and MERS in conducting acts which, at its essence, constitute a claim of an alleged conspiracy to commit fraud. See, e.g., Amended Complaint at ¶ 33 ("MERS and Foreclosing Defendants failed to properly credit payments made and foreclosed on the Subject Property based on Plaintiff's alleged non-payment."), ¶ 35 ("[T]he Foreclosing Defendants concealed material facts known to them but not to Plaintiff regarding payments, notices, . . . and charges with the intent to defraud Plaintiff."). The elements of civil conspiracy are:

> Under Hawaii law, "'the accepted definition of a conspiracy is a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.'" Annan-Yartey v. Honolulu Police Dep't, 475 F. Supp. 2d 1041, 1050 (D. Haw. 2007) (quoting Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91

Hawai`i 224, 252, 982 P.2d 853, 881 (1999)).[7]
Because "there can be no civil claim based upon a
conspiracy alone," Weinberg v. Mauch, 78 Hawai`i
40, 49, 890 P.2d 277, 286 (1995), a plaintiff
must allege an underlying actionable claim.  See
Ellis v. Crockett, 51 Haw. 45, 57–58, 451 P.2d
814, 822–23 (1969) (the plaintiffs' failure to
allege an underlying claim of deceit precluded
them from alleging conspiracy to deceive).  A
civil conspiracy claim therefore has three
elements: "(1) the formation of a conspiracy;
(2) wrongful conduct in furtherance of the
conspiracy, i.e., an actionable claim based upon
deceit; and (3) damage." Young v. Bishop Estate,
2009 WL 3763029, at *14 (D. Haw. Nov. 6, 2009).

Menashe, 850 F. Supp. 2d at 1138 (alteration in Menashe).

Plaintiff merely recites the elements of a conspiracy

claim, as opposed to any factual allegations establishing the

plausibility of this claim, and she fails to plead the

circumstances of fraud and conspiracy with the required

particularity.  See Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th

Cir. 2007) ("Rule 9(b) imposes heightened pleading requirements

where 'the object of the conspiracy is fraudulent.'" (quoting

Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 991

(9th Cir.) cert. denied, --- U.S. ---, 127 S. Ct. 83, 166 L. Ed.

2d 30 (2006)).  To the extent that Count II asserts a conspiracy

to commit fraud, it must be dismissed under Rule 9(b), and this

dismissal should be without prejudice if the defects are

---

[7] Robert's Hawaii has been superseded by statute on other
grounds.  See, e.g., Hawaii Med. Ass'n v. Hawaii Med. Serv.
Ass'n, Inc., 113 Hawai`i 77, 105-06, 148 P.3d 1179, 1207-08
(2006).

curable.  See id.  Plaintiff is proceeding *pro se*.  The Court
cannot rule out that allegation of other facts could possibly
cure these defects, and thus the dismissal must be **without
prejudice and with leave to amend.**

### C.   Count III (Fraud Against All Defendants)

Plaintiff's allegations in Count III solely relate to
alleged misrepresentations made by a paralegal about his
qualifications as a licensed attorney while he was apparently
employed by a law firm hired by Plaintiff to represent her in
the Foreclosure Action.  See Amended Complaint at ¶¶ 40-44.
This person and the law firm have not been identified as
defendants in the instant action.  Count III does not contain
specific allegations involving PNC or MERS.  Further, neither
Plaintiff's Memorandum in Opposition nor her Surreply suggest
that either PNC or MERS could possibly be liable for the
paralegal's alleged misrepresentations.  Thus, Count III must be
dismissed for failure to state a claim and, because amendment
would be futile, it is dismissed with prejudice.

### D.   Count VII (Wrongful Foreclosure
###       Against Foreclosing Defendants)

In Count VII, Plaintiff challenges the validity of the
assignment of the Mortgage to PNC.  See Amended Complaint at
¶¶ 56-58.  Plaintiff, however, does not have standing to
challenge the Assignment:

> Hawaii's foreclosure law, like Michigan law,
> does not permit mortgagor-plaintiff standing to
> challenge an assignment.  Courts interpreting
> Hawaii law have only permitted a plaintiff-
> mortgagor to challenge an assignment that was
> made by an entity that no longer existed at the
> time of the assignment, as such an assignment
> would be void.  Billete v. Deutsche Bank Nat'l
> Trust Co., No. 13-00061, 2013 WL 2367834, at *7
> (D. Haw. May 29, 2013) (no standing to bring
> wrongful foreclosure and Unfair and Deceptive
> Trade Practices Act claims alleging that an
> assignment occurred after the closing date of a
> Pooling and Service Agreement, but permitting
> claims alleging that an assignment was made after
> the assignor mortgagee's dissolution); Nottage v.
> Bank of New York Mellon, No. 12-00418, 2012 WL
> 5305506, at *4 (D. Haw. Oct. 25, 2012)
> (permitting claims alleging that an assignment
> was made when the assignor no longer existed,
> having been acquired by another entity).

Lizza v. Deutsche Bank Nat'l Tr. Co., 1 F. Supp. 3d 1106, 1118

(D. Hawai`i 2014), *aff'd*, 714 F. App'x 620 (9th Cir. 2017).

In the alternative, Count VII alleges the foreclosure

upon the Subject Property was wrongful because the Foreclosing

Defendants "failed to comply with [California] Civil Code

Section 2923.5 and 2923.6."  [Amended Complaint at ¶ 59.]  This

portion of Count VII fails as a matter of law because the

Subject Property is located in Hawai`i, and the judicial

foreclosure was obtained pursuant to Hawai`i law.  See, e.g.,

Kasten Decl., Exh. 4 (Foreclosure Decision) at pg. 3, ¶ 7

(stating the address of the Subject Property); id. at pg. 9, ¶ 8

("Pursuant to Section 501-151 and/or 634-51 of the Hawaii

Revised Statutes, as amended, any and all other or further

encumbrances or purchases in respect of the [Subject] Property or any part therefore, whose interest arises from and after May 5, 2015, will be hereby forever barred of and from any and all right title and interest in and to the [Subject] Property and every part thereof upon the closing of the sale herein authorized.").

Count VII must therefore be dismissed for failure to state a claim and, because amendment would be futile, it is dismissed with prejudice.

### E.    Count IX (Breach of the Implied Covenant of Good Faith and Fair Dealing Against the Foreclosing Defendants)

In Count IX, Plaintiff alleges PNC and MERS breached the implied covenant of good faith and fair dealing implied in every contract.  See Amended Complaint at ¶¶ 67, 70-72. Plaintiff cannot maintain this claim:

> This district court has characterized similar claims as attempts to allege claims for the tort of bad faith.  See, e.g., Phillips [v. Bank of Am., Civil No. 10-00551 JMS-KSC], 2011 WL 240813, at *5 [(D. Hawai`i Jan. 21, 2011)] (citing Best Place v. Penn Am. Ins. Co., 82 Hawai`i 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract)).  Although bad faith is an accepted tort when a plaintiff is a party to an insurance contract, the tort has not been recognized in Hawai`i based on a mortgage loan contract.
>
> "In Best Place, the Hawaii Supreme Court noted that although Hawaii law imposes

19

a duty of good faith and fair dealing in all
contracts, whether a breach of this duty
will give rise to a bad faith tort cause of
action depends on the duties inherent in a
particular type of contract." <u>Jou v. Nat'l
Interstate Ins. Co. of Haw.</u>, 114 Hawai`i
122, 129, 157 P.3d 561, 568 (Haw. App. 2007)
(citing <u>Best Place</u>, 82 Hawai`i at 129, 920
P.2d at 334). "The court concluded that
special characteristics distinguished
insurance contracts from other contracts and
justified the recognition of a bad faith
tort cause of action for the insured in the
context of first- and third-party insurance
contracts." <u>Id.</u> (citing <u>Best Place</u>, 82
Hawai`i at 131-32, 920 P.2d at 345-46).
Indeed, "the Hawaii Supreme Court emphasized
that the tort of bad faith, as adopted in
<u>Best Place</u>, requires a contractual
relationship between an insurer and an
insured." <u>Id.</u> (citing <u>Simmons v. Puu</u>, 105
Hawai`i 112, 120, 94 P.3d 667, 675 (2004)).

Moreover, although commercial contracts
for "sale of goods" also contain an
obligation of good faith in their
performance and enforcement, this obligation
does not create an independent cause of
action. <u>See Stoebner Motors, Inc. v.
Automobili Lamborghini S.P.A.</u>, 459 F. Supp.
2d 1028, 1037-38 (D. Haw. 2006). And Hawaii
courts have noted that "[o]ther
jurisdictions recognizing the tort of bad
faith . . . limit such claims to the
insurance context or situations involving
special relationships characterized by
elements of fiduciary responsibility, public
interest, and adhesion." <u>Id.</u> at 1037
(quoting <u>Francis v. Lee Enters.</u>, 89 Hawai`i
234, 238, 971 P.2d 707, 711 (1999)). . . .

<u>Tedder v. Deutsche Bank Nat'l Tr. Co.</u>, 863 F. Supp. 2d 1020,

1039 (D. Hawai`i 2012) (some alterations in <u>Tedder</u>) (quoting

<u>Phillips</u>, 2011 WL 240813, at *5). As Plaintiff cannot allege a

special relationship with either PNC or MERS, and the contract at issue is a mortgage contract and not an insurance contract, she has no cognizable claim for breach of the covenant of good faith and fair dealing.  Count IX must therefore be dismissed for failure to state a claim and, because amendment would be futile, it is dismissed with prejudice.

### F.   Count X (Unjust Enrichment Against the Foreclosing Defendants)

Plaintiff contends that "the Foreclosing Defendants have been unjustly enriched at the expense of Plaintiff . . . ." [Amended Complaint at ¶ 74.] Unjust enrichment is an equitable remedy which is available only when legal remedies are inadequate and is not available when an express contract exists:

> Hawai`i law has approved "the principle, long-invoked in the federal courts, that 'equity has always acted only when legal remedies were inadequate.'" [Porter v. Hu, 116 Hawai`i 42, 55, 169 P.3d 994, 1007 (Ct. App. 2007)] (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 509, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959)).  The absence of an adequate remedy at law, therefore, is the "necessary prerequisite" to maintaining equitable claims.  Id. (quoting Bd. of Dirs. of the Ass'n of Apt. Owners of Regency Tower Condo. Project v. Regency Tower Venture, 2 Haw. App. 506, 635 P.2d 244, 249 (1981)).

> Equitable remedies are not available when an express contract exists between the parties concerning the same subject matter.  See id.; see also Paracor Fin. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) (analyzing both California and New York law).  The purpose of the rule is to guard against the use of equitable remedies to "distort a negotiated arrangement by

> broadening the scope of the contract." <u>Gibbs-Brower Intern. v. Kirchheimer Bros. Co.</u>, 611 F. Supp. 122, 127 (D.C. Ill. 1985) (analyzing Illinois law) (citation omitted).  Where the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity.

<u>Sung v. Hamilton</u>, 710 F. Supp. 2d 1036, 1064 (D. Hawai`i 2010). Plaintiff agrees that a note and mortgage existed and governed the rights and obligations of the parties, and thus she cannot maintain an action for unjust enrichment.  Count X must therefore be dismissed for failure to state a claim and, because amendment would be futile, it is dismissed with prejudice.

### G.   Count XI (Violation of California Business and Professions Code § 17200, *et seq.* Against the Foreclosing Defendants)

PNC and MERS correctly note that Count XI "appears to be an unfair competition claim brought pursuant to California's unfair competition law, . . . and the Federal Trade Commission Act . . . ." [Mem. in Supp. of Motion at 22 (citing (Amended Complaint at ¶¶ 76-84).]  Plaintiff cannot maintain a claim under either of these laws because a claim under Cal. Bus. & Pro. Code § 17200 does not apply outside of California to actions which injure non-residents.  <u>See Standfacts Credit Servs. Inc. v, Experian Info. Sols., Inc.</u>, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005) (citing <u>Norwest Mortgage, Inc. v. Superior Ct.</u>, 72 Cal. App. 4th 214, 226, 85 Cal. Rptr. 2d 18 (1999)).

Further, there is no private right of action for an unfair
competition claim under the Federal Trade Commission Act.
O'Donnell v. Bank of Am., Nat'l Ass'n, 504 F. App'x 566, 568
(9th Cir. 2013) (citing Carlson v. Coca-Cola Co., 483 F.2d 279,
280 (9th Cir. 1973)).

Even if Count XI is liberally construed as a claim for
unfair or deceptive acts or practices ("UDAP"), pursuant to
§ 480-2, Hawai'i Revised Statutes, this claim cannot be saved
from dismissal:

> To state a UDAP claim, a consumer must
> allege "(1) a violation of [section] 480-2;
> (2) injury to the consumer caused by such a
> violation; and (3) proof of the amount of
> damages." Compton v. Countrywide Fin. Corp., 761
> F.3d 1046, 1053 (9th Cir. 2014) (citation omitted
> and internal quotation marks omitted).

Sigwart v. U.S. Bank, 713 F. App'x 535, 537–38 (9th Cir. 2017)
(alteration in Sigwart). Plaintiff merely alleges generalized
actions without stating what unfair or deceptive acts or
practices PNC or MERS did as to Plaintiff's Mortgage, and what
injury was caused as a result. Count XI must therefore be
dismissed. Plaintiff has already amended her complaint once.
Other than generalized language about unfair practices,
Plaintiff provides no specific facts or allegations as to PNC or
MERS, except that: she sought to refinance her loan with PNC but
was denied refinancing; there was a class action against PNC for
which she was awarded a $1,000 settlement; PNC is somehow

23

involved with Bernie Madoff; and the Property was foreclosed
upon.  <u>See</u> Amended Complaint at ¶¶ 15, 17, 22-24.  The
foreclosure in issue took place in 2017, and PNC's servicing of
the mortgage apparently took place from 2011.  [<u>Id.</u> at ¶¶ 15,
23.]  Plaintiff has already amended her complaint and failed to
provide additional facts necessary to defeat dismissal.  To
permit her to amend yet again would be prejudicial to PNC and
MERS, given the length of time that has passed since the events
underlying the foreclosure have taken place and preposterousness
of the allegations.  The Court exercises its discretion and
dismisses Count XI with prejudice.  <u>See</u> <u>Cafasso</u>, 637 F.3d at
1058.

## H.   Count XII (Quiet Title Against PNC and All Other Persons Claiming Title

A plausible quite title claim requires specific
allegations which Plaintiff fails to allege in the Twelfth Cause
of Action.  These are:

> A quiet title action cannot be maintained
> unless the plaintiff plausibly alleges that the
> property's current owners are non-bona fide
> purchasers.  <u>See</u> <u>Lynch [v. Bank of New York</u>
> <u>Mellon</u>, CIVIL 17-00195 LEK-RLP], 2017 WL 3568667,
> at *3 [(D. Hawai`i Aug. 15, 2017)].  As Plaintiff
> fails to allege that the Current Owners are non-
> bona fide purchasers, he fails to allege a
> necessary element of a quiet title claim.

> Further, "a quiet title claim against a
> mortgagee . . . requires an allegation that
> Plaintiffs have paid, or are able to tender, the
> amount of indebtedness."  <u>Klohs v. Wells Fargo</u>

24

> Bank, N.A., 901 F. Supp. 2d 1253, 1262–63 (D.
> Hawai`i 2012) (brackets, internal quotation
> marks, and citation omitted).  Plaintiff fails to
> plead that he has tendered or is able to tender
> the outstanding amount of the loan.

Seegers v. CIT Bank N.A., No. CV 17-00399 LEK-KSC, 2018 WL

1558550, at *7–8 (D. Hawai`i Feb. 28, 2018) (some alterations in

Seegers).  Plaintiff's Amended Complaint is devoid of such

allegations.  Count XII must therefore be dismissed for failure

to state a claim and, because there may be facts which Plaintiff

can allege which would save this claim **as against PNC, it is**

**dismissed without prejudice and with leave to amend.[8]**  As this

claim can only be maintained against a mortgagee, any amendment

as to MERS would be futile, and Count XII is dismissed with

prejudice as to MERS.

> **I.    Count XIII (Slander of Title**
> **Against the Foreclosing Defendants)**

Hawaii law requires the following to maintain a claim

for slander of title:

> *Slander of title* has been discussed in prior
> Hawai`i appellate opinions, but not yet formally
> adopted.  We now recognize it as a common law
> tort in Hawai`i and adopt the following generally
> recognized elements to establish a claim for
> slander of title:
>
> > (1) ownership of or interest in the property
> > by the plaintiff; (2) falsity of the words
> > published; (3) malice of the defendant in

---

[8] Plaintiff may also reallege Count XII against the Unknown
Interest Defendants, if she can plead sufficient factual
allegations to support it.

> > publishing the false statements;
> > (4) publication to some person other than
> > the owner; (5) publication in disparagement
> > of plaintiff's property or the title to it;
> > and (6) special damages proximately
> > resulting from such publication.

> 50 Am. Jur. 2d *Libel and Slander* § 530 (2006);
> C.f. B & B Inv. Grp. v. Gitler, 229 Mich. App. 1,
> 581 N.W.2d 17, 20 (1998) ("To establish slander
> of title at common law, a plaintiff must show
> falsity, malice, and special damages, i.e., that
> the defendant maliciously published false
> statements that disparaged a plaintiff's right in
> property, causing special damages.") (citations
> omitted); Kensington Dev. Corp. v. Israel, 139
> Wis. 2d 159, 407 N.W.2d 269, 272 (Wis. Ct. App.
> 1987).

Isobe v. Sakatani, 127 Hawai`i 368, 377–78, 279 P.3d 33, 42–43

(Ct. App. 2012) (italics in original).  Plaintiff has failed to

include any allegations regarding malice, a required element of

a claim for slander of title:

> The malice element for slander of title has
> been described as follows:

> > Malice, express or implied, in the making of
> > the slanderous statement is an essential
> > ingredient of a cause of action for slander
> > of title.  While actual malice must be
> > shown—that is, knowledge by the defendants
> > that the disparaging statements were false
> > or were made with reckless disregard for
> > their truth or falsity—the malice necessary
> > for a finding of liability for slander of
> > title is not malice in its worst sense.  An
> > act will be deemed malicious if made in
> > reckless or wanton disregard of the rights
> > of another and with personal ill-will, or
> > with an intent to deceive or injure, or to
> > vex or annoy, or with no legal
> > justification.  Malice is established by
> > showing that a party made a false statement,

> with full knowledge of its falsity, for the
> purpose of injuring the complainant.
>
> 50 Am. Jur. 2d *Libel and Slander* § 531 (2006)
> (internal footnotes omitted). . . .

Id. at 380, 279 P.3d at 45 (italics in original).  Count XIII

must therefore be dismissed for failure to state a claim and,

because there may be facts which Plaintiff can allege which

would save this claim as against PNC, it is dismissed without

prejudice and with leave to amend.  Any amendment as to MERS,

however, would be futile and Count XIII is dismissed with

prejudice as to MERS.

## J.   **Count XIV (Violations of RICO Act)**

Plaintiff alleges a claim pursuant to the RICO

statutes.  She must therefore demonstrate the following:

> To prevail on a civil RICO claim, a
> plaintiff must prove that the defendant engaged
> in (1) conduct (2) of an enterprise (3) through a
> pattern (4) of racketeering activity and,
> additionally, must establish that (5) the
> defendant caused injury to plaintiff's business
> or property.  18 U.S.C. §§ 1962(c), 1964(c).  The
> "fifth element includes two related components.
> First, a civil RICO plaintiff must show that his
> injury was proximately caused by the [prohibited]
> conduct.  Second, the plaintiff must show that he
> has suffered a concrete financial loss."
> Fireman's Fund Ins. Co. v. Stites, 258 F.3d 1016,
> 1021 (9th Cir. 2001) (citation omitted). . . .

Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir.

2002) (some alterations in Chaset).  While the Amended Complaint

alleges some of the elements of a civil RICO claim, it does so

in the most conclusory terms.  Moreover, the allegations fail to state a basis that MERS and PNC "associated together" to form an enterprise: "From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009).  But the greatest blow to Plaintiff's civil RICO claim is that it appears to rest on a single judicial foreclosure of her individual real property without a showing of an ongoing organization or pattern or racketeering activity.  Under these circumstances, this district court has found that "there can be no evidence of an ongoing organization or pattern of racketeering activity," and that a plaintiff cannot "'show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'"  Sakuma v. Ass'n of Apartment Owners of the Tropics at Waikele, CIVIL NO. 16-00274 DKW-KJM, 2016 WL 6433842, at *9 (D. Haw. Oct. 28, 2016) (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)), aff'd, 707 F. App'x 906 (9th Cir. 2017), cert. denied, 139 S. Ct. 328 (2018).  Count XIV must therefore be dismissed for failure to state a claim, and the dismissal must be with prejudice because amendment would be futile.

**CONCLUSION**

In summary, the Court GRANTS IN PART AND DENIES IN PART PNC and MERS's Motion for Judgment on the Pleadings, filed November 4, 2019, as follows:

-The following claims are dismissed with prejudice as to both PNC and MERS:  Count I, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count IX, Count X, Count XI, and Count XIV.

-The following claims are dismissed with prejudice as to MERS only:  Count XII and Count XIII.

-The following claims are dismissed without prejudice and with leave to amend by **June 10, 2020:**  Count II as to both PNC and MERS, and Count XII and Count XIII as to PNC only.

It bears repeating here that Plaintiff is WARNED that failure to file a second amended complaint by **June 10, 2020** will result in dismissal of her remaining claims, without leave to amend.  In other words, she would have no remaining claims in this case, and the Court will direct the Clerk's Office to close this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, May 8, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

HERMA BARBARA MEDINA REYNA VS. PNC BANK, ET AL; CV 19-00248 LEK-
RT; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS PNC
BANK, NATIONAL ASSOCIATION AND MORTGAGE ELECTRONIC REGISTRATION
SYSTEM INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS