UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

HERMA BARBARA MEDINA REYNA,

            Plaintiff,

    vs.

PNC BANK, N.A.; ET AL.,

            Defendants.

CIV. NO. 19-00248 LEK-RT

**ORDER: DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

        Before the Court are: *pro se* Plaintiff Herma Barbara Medina Reyna's ("Reyna") Motion for Summary Judgment ("Reyna's "Motion"), filed on September 9, 2020; Defendant PNC Bank, National Association's ("PNC") Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment ("PNC Motion"), filed on September 16, 2020; and Defendant Mortgage Electronic Registration Systems, Inc.'s ("MERS") Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment ("MERS Motion"), filed on September 16, 2020.[1]  [Dkt. nos. 115, 121, 123.]  On October 13, 2020, Reyna filed her response to the PNC Motion ("Reyna's PNC Response Memorandum")

---

[1] PNC and MERS will be referred to collectively as "Defendants," and the PNC Motion and the MERS Motion will be referred to collectively as "Defendants' Motions."

and her response to the MERS Motion ("Reyna's MERS Response Memorandum"). [Dkt. nos. 127, 128.] On October 30, 2020, PNC filed its response to Reyna's PNC Response Memorandum, and MERS filed its response to Reyna's MERS Response Memorandum on November 6, 2020. [Dkt. nos. 130, 133.] The Court finds these matters suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").

For the reasons set forth below, Reyna's Motion is denied, and Defendants' Motions are granted in part and denied in part. Defendants' requests for judgment on the pleadings are granted as to the portions of Reyna's fraud claim based on what Reyna identifies as the sixth and seventh acts of fraud, and Defendants' requests for judgment on the pleadings are denied as to Reyna's other claims because those claims have been considered under the summary judgment standard. Summary judgment is granted in favor of Defendants as to all of Reyna's remaining claims against them.

## BACKGROUND

Reyna filed her original complaint in this case on May 13, 2019. [Dkt. no. 1.] She filed an amended complaint on June 12, 2019 ("First Amended Complaint"). [Dkt. no. 35.] PNC and MERS filed a motion for judgment on the pleadings on

2

November 4, 2019 ("11/4/19 Motion"), and the motion was granted in part and denied in part in a May 8, 2020 order ("5/8/20 Order"). [Dkt. nos. 44, 71.[2]] In response to the 5/8/20 Order, Reyna filed her Second Amended Complaint for: (1) Fraud, (2) Quiet Title, and (3) Slander of Title ("Second Amended Complaint") on June 3, 2020. [Dkt. no. 75.] The Second Amended Complaint remains the operative pleading.

This case relates to real property that Reyna purchased in 2007 ("the Property") and which PNC commenced a foreclosure proceeding against in 2015. [Id. at ¶¶ 8, 19.] Reyna alleges Defendants committed multiple fraudulent acts related to her mortgage loan, as well as during the foreclosure proceedings and the instant case ("Count I"). [Id. at pgs. 7-12.] Reyna asserts a quiet title claim against PNC, and she seeks a declaratory judgment that she is the rightful owner of the Property ("Count II"). [Id. at pgs. 12-14.] Reyna also asserts PNC committed slander of title by wrongfully recording invalid documents regarding the ownership of the Property ("Count III"). [Id. at pgs. 14-15.] Count I corresponds to Count II of the First Amended Complaint, which was construed as a claim based on an alleged conspiracy to commit fraud. [Second Amended Complaint at ¶ 12; 5/8/20 Order at 15.] Counts II and

---

[2] The 5/8/20 Order is also available at 2020 WL 2309248.

3

III correspond to Counts XII and XIII of the First Amended Complaint.  [Second Amended Complaint at ¶¶ 35, 41.]

On May 21, 2007, Reyna executed a $440,000 promissory note in favor of lender Meridian Financial Network Inc. ("Note" and "Meridian").  [Concise statement of facts in supp. of PNC Motion ("PNC CSOF"), filed 9/16/20 (dkt. no. 122), Decl. of Thomas W. Morris ("Morris Decl.") at ¶ 4.[3]]  To secure the Note, Reyna executed a mortgage encumbering the Property in favor of MERS, as the nominee for Meridian, its successors, and assigns ("First Mortgage").  The First Mortgage was recorded in the State of Hawai`i Bureau of Conveyances ("BOC") on May 30, 2007 as Document No. 2007-095712.  Id. at ¶ 6; see also PNC CSOF, Decl. of Ryan B. Kasten ("Kasten Decl."), Exh. 1 (certified copy of the First Mortgage).  Reyna also executed another mortgage encumbering the Property, in favor of MERS as nominee for Meridian, its successors, and assigns, to secure a $83,250.00 indebtedness ("Second Mortgage").  The Second Mortgage was

---

[3] Thomas W. Morris is a PNC employee who, "[i]n the regular performance of [his] job functions, [has] access to and [is] familiar with the business records maintained by PNC for the purpose of servicing mortgage loans, including the business records created for and relating to the subject Loan."  [Morris Decl. at ¶ 2.]  He states that, although some of the records for Reyna's loan were created by a prior loan servicing entity, those records "were integrated and boarded into PNC's systems, such that the prior servicer's records concerning the Loan are now part of PNC's records."  [Id. at ¶ 3.]

recorded in the BOC on May 30, 2007 as Document No. 2007-095713. [Kasten Decl., Exh. 3 (certified copy of the Second Mortgage).]

MERS, as nominee for the lender and its successors and assigns, executed an Assignment of Mortgage assigning Reyna's first loan to PNC ("Assignment"). The Assignment was recorded in the BOC on July 13, 2011 as Document No. 2011-109446. [Id., Exh. 2 (certified copy of the Assignment).]

MERS, as nominee for the lender and its successors and assigns, executed a Corporate Assignment of Mortgage assigning the Second Loan to Wilmington Trust, National Association, as trustee under an agreement dated March 1, 2012 ("Wilmington"). That assignment was recorded in the BOC on May 15, 2013 as Document No. A-48831040. [Id., Exh. 4 (certified copy of the assignment).] Wilmington subsequently assigned Reyna's second loan to Trinity Financial Services, LLC ("Trinity"). That assignment was prepared on October 17, 2014, but it was recorded in the BOC on January 30, 2015 as Document No. A55080607. [Id., Exh. 5 (certified copy of the assignment).] Trinity assigned Reyna's second loan to Capstone Funding Group, Inc. ("Capstone"). That assignment was prepared on September 19, 2014, but it was recorded in the BOC on January 30, 2015 as Document No. A55080608. [Id., Exh. 6 (certified copy of the assignment).]

On April 29, 2015, PNC filed its Verified Complaint to Foreclose Mortgage ("Foreclosure Complaint") in PNC Bank National Ass'n v. Reyna, et al., Civil No. 15-1000224(3), before the State of Hawai`i Second Circuit Court ("Foreclosure Action"). [Id., Exh. 7 (Foreclosure Complaint).] The Foreclosure Action addressed the Note and the First Mortgage and alleged PNC held both. [Id. at ¶¶ 6-9.] Wilmington, the holder of the Second Mortgage at the time, was named as a defendant in the Foreclosure Action. [Id. at ¶ 3.]

The state court issued its Findings of Fact and Conclusions of Law ("Foreclosure Decision") on July 20, 2017. [Kasten Decl., Exh. 9.] It included an order granting summary judgment in favor of PNC and ordering an interlocutory decree of foreclosure. [Id. at PageID #: 1196-1200.] The state court also entered a judgment ("Foreclosure Judgment") on July 20, 2017. [Kasten Decl., Exh. 10.] Reyna initiated an appeal from the Foreclosure Judgment, but the Hawai`i Intermediate Court of Appeals ("ICA") dismissed the appeal for lack of appellate jurisdiction because Reyna's notice of appeal was untimely. [Id., Exh. 12 (order issued by the ICA on June 21, 2018).[4]]

The crux of the instant case is that Reyna contends Defendants had no interest in the Property when PNC initiated

---

[4] The ICA's dismissal order is also available at 2018 WL 3062466.

6

the Foreclosure Action.  She asserts PNC cannot prove it had a valid interest in the Property because it did not, and does not, have the original Note.  In support of her position, Reyna presents a partial copy of a May 2007 letter to 1National City Mortgage, that purports to transmit Reyna's Note "and related collateral documents."  [Separate and concise statement of facts in supp. of Reyna's Motion ("Reyna's CSOF"), filed 9/9/20 (dkt. no. 116), Exh. A.]  However, Exhibit A is only a one-page document, and it appears that there was at least one more page to the letter.  Reyna also submits a discovery response by PNC stating:

> PNC objects to this request on the grounds that it is vague and ambiguous as it fails to define or explain the terms "chain of title", "verified by MERS" and "tracking system", argumentative, confusing, unduly burdensome, and seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.
>
> Without waiving the foregoing objections, and based on its understanding of the request, PNC responds that it does not have an "Original Chain of title with dates and documents verified by MERS".

[Id., Exh. G (handwritten emphases omitted).]  In addition, Reyna submits a partial version of a letter addressed to her from PNC Mortgage, notifying her that the servicing of her mortgage loan was being transferred from PNC Mortgage to BSI Financial Services, effective with her May 1, 2012 payment.

7

[Id., Exh. C.]  Reyna also submits a December 4, 2014 letter to Reyna from Trinity stating that it was transferring the servicing of her loan to Capstone.  [Id., Exh. D at PageID #: 1025.]  Reyna's Exhibit D includes an Allonge to the Note, which identifies Reyna as the borrower, and the loan amount as $83,250.00.  [Id. at PageID #: 1026.]  In other words, Exhibit D relates to Reyna's second loan.

Reyna's Motion argues that, based on the evidence in the record, she is entitled summary judgment as to all of the claims in the Second Amended Complaint.  The PNC Motion argues PNC is entitled to judgment on the pleadings, or in the alternative summary judgment, as to: 1) Count I, because the collateral estoppel, *i.e. res judicata*, doctrine precludes Reyna from relitigating the issues of whether PNC is the current mortgagee and holder of the Note and because Count I is not pled with particularity; 2) Count II, because it is insufficiently pled and because Reyna's quiet title claim should have been pled as a compulsory counterclaim in the Foreclosure Action; and 3) Count III, because Reyna failed to cure the defects identified in the 5/8/20 Order.  The MERS Motion seeks judgment on the pleadings, or in the alternative summary judgment, in its favor as to Count I because: a) Reyna lacks standing to challenge the Assignment; b) MERS had the authority to enter

into the Assignment; c) Reyna's fraud claim is insufficiently pled; and d) the claim is time-barred.

## DISCUSSION

### I.   Judgment on the Pleadings

In light of the amount of time that this case has been pending, and the fact that Reyna has moved for summary judgment, this Court declines to consider the majority of Defendants' requests for judgment on the pleadings. Their requests will be only considered as to two of the alleged instances of fraud included within Count I – the "Sixth Act of Fraud" and the "Seventh Act of Fraud." [Second Amended Complaint at pgs. 11-12.] Except for Defendants' arguments as to those portions of Count I, all of the parties' arguments will be addressed under the summary judgment standard.

The "Sixth Act of Fraud" argues Defendants, through their counsel, made fraudulent statements in the 11/4/19 Motion. [Id. at pg. 11.] Reyna's allegations do not present a conspiracy to commit fraud claim. See 5/8/20 Order at 15-16 (describing the elements of a civil conspiracy claim under Hawai`i law). Rather, Reyna disagrees with, and seeks to challenge, this Court's rulings on the 11/4/19 Motion in the 5/8/20 Order. Reyna's arguments must be raised in an appropriate appeal; they do not state a plausible claim for conspiracy to commit fraud. See id. at 5-7 (describing the

9

legal standards applicable to a motion for judgment on the pleadings).  Defendants are therefore entitled to judgment on the pleadings as to the portion of Count I based on the "Sixth Act of Fraud."  That portion of Count I is dismissed, and the dismissal is with prejudice because it is absolutely clear that Reyna cannot cure the deficiency in that portion of Count I by amendment.  See id. at 9 (citing Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007)).

The "Seventh Act of Fraud" is based upon various events that have occurred in the Foreclosure Action since the filing of the Foreclosure Judgment.  [Second Amended Complaint at pgs. 11-12.]  Based upon the allegations in the Second Amended Complaint and this Court's judicial notice of the post-Foreclosure Judgment proceedings in the Foreclosure Action, the events described in the "Seventh Act of Fraud" occurred in on-going state court proceedings.  See generally 5/8/20 Order at 6-7 (discussing when consideration of materials beyond the complaint does not require the conversion of a motion for judgment on the pleadings to a motion for summary judgment); see also infra Discussion Section II.A (discussing the bifurcated nature of foreclosure cases).  Thus, the Rooker-Feldman doctrine[5]

---

[5] The Rooker-Feldman doctrine was established by the United States Supreme Court in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

does not apply to the allegations in the "Seventh Act of Fraud" because there is no final court judgment in the portion of the Foreclosure Action described therein.  See 5/8/20 Order at 10 ("Under Rooker-Feldman, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." (quoting Noel v. Hall, 341 F.3d 1148, 1154-55 (9th Cir. 2003)).  However, because considering Reyna's allegations in the portion of Count I based on the Seventh Act of Fraud would implicate the ongoing proceedings in the Foreclosure Action, this Court declines to exercise jurisdiction over that portion of Count I pursuant to the Younger abstention doctrine.  See Morelli v. Hyman, Civ. No. 19-00088 JMS-WRP, 2020 WL 252986, at *4 (D. Hawai`i Jan. 16, 2020) (stating that, "under Younger [v. Harris, 401 U.S. 37, 43-44 (1971)], '[a] federal court may abstain' from exercising jurisdiction over claims that implicate ongoing state proceedings" (quoting Herrera v. City of Palmdale, 918 F.3d 1037, 1043 (9th Cir. 2019))).  Defendants' Motions are granted, insofar as the portion of Count I based on the Seventh Act of Fraud is dismissed, and the dismissal is with prejudice because it is absolutely clear that Reyna cannot cure the deficiency in that portion of Count I by amendment.

To the extent that Defendants' Motions seek judgment on the pleadings, the motions are denied as to the remaining

portions of Count I and as to Counts II and III.  This Court will not consider Defendants' arguments regarding the sufficiency of the allegations in support of those claims or Defendants' arguments regarding Reyna's compliance with the 5/8/20 Order as to those claims.[6]

## II.  *Res Judicata* Effect of the Foreclosure Judgment

This Court turns first to PNC's argument that the Foreclosure Judgment is entitled to *res judicata* effect.

> "Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised **or could have been raised**' in a prior action." Stewart v. U.S. Bankcorp, 297 F.3d 953, 956 (9th Cir. 2002) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001)).  To determine the preclusive effect of a state court judgment, the court must look to Hawaii law, but federal law governs the preclusive effect of a federal court judgment. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984) (explaining that "federal courts may look to common law or to the policies supporting res judicata . . . in assessing the preclusive effect of decisions of other federal courts," but must determine the preclusive effect of a state court judgment based on the law of that state).  Under Hawaii law, claim preclusion applies where there is (1) a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is the same as the one presented in the current action.  See Dela Cruz [v. McManaman, Civ. No. 11-00747 JMS/RLP], 2012 WL 4472260, at *4

---

[6] The Court notes that Reyna attempted to cure the defects in the First Amended Complaint that were addressed in the 5/8/20 Order by including additional allegations in the Second Amended Complaint.  See, e.g., Second Amended Complaint at pgs. 7-12.

[(D. Hawai`i Sept. 26, 2012)] (citing Bremer v. Weeks, 104 Haw. 43, 53, 85 P.3d 150, 160 (2004)).

Dela Cruz v. Child Welfare Servs., Civ. No. 16-00669 JMS-KSC, 2017 WL 778074, at *3 (D. Hawai`i Feb. 28, 2017) (emphasis and some alterations in Dela Cruz).  To that end, pursuant to Hawai`i law,

> [t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided.

Bush v. Watson, 81 Hawai`i 474, 479-480, 918 P.2d 1130, 1135-1136 (1996) (quoting Morneau v. Stark Enters., Ltd., 56 Haw. 420, 422-423, 539 P.2d 472, 474-475 (1975)); see also Dannenberg v. State, 139 Hawai`i 39, 59, 383 P.3d 1177, 1197 (2016).

### A.   **Final Judgment on the Merits**

"For res judicata to apply, the prior action must have resulted in a final decision on the merits."  Spinney v. Greenwich Cap. Fin. Prods., Inc., No. Civ. 05-00747 ACK/KSC, 2006 WL 1207400, at *8 (D. Hawai`i May 3, 2006) (some citations omitted) (citing Bush, 81 Haw. at 480).  A summary judgment ruling is a final decision on the merits for purposes of the res judicata analysis.  Pedrina v. Chun, 906 F. Supp. 1377, 1401 (D. Hawai`i 1995) (citing Hall v. State, 7 Haw. App. 274, 283, 756

P.2d 1048, 1054 (1988)), *aff'd*, 97 F.3d 1296 (9th Cir. 1996), *cert. denied sub nom.*, 520 U.S. 1268 (1997).  "Under Hawaii law, a judgment is final for purposes of res judicata where the time to appeal has expired without an appeal being taken."  Id. at 1401-02 (citing Glover v. Fong, 42 Haw. 560 (1958)).

The Foreclosure Judgment was entered pursuant to the Foreclosure Decision.  [Kasten Decl., Exh. 9 (Foreclosure Decision), Exh. 10 (Foreclosure Judgment).]  The state court issued the Foreclosure Decision after a hearing on PNC's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure.  [Kasten Decl., Exh. 9 at PageID #: 1192.]  The state court: ruled that Reyna was in default under the Note and First Mortgage; ruled that PNC was the holder of the Note and First Mortgage; foreclosed upon the First Mortgage, as requested by PNC; and order that the Property be sold at a public auction. [Id. at PageID #: 1196.]

The fact that the proceedings in the Foreclosure Action continued after the issuance of the Foreclosure Judgment does not mean the Foreclosure Judgment is not a final decision on the merits for purposes of *res judicata*.  See generally Kasten Decl., Exh. 18 (docket sheet for the Foreclosure Action through 9/5/20).  "'[M]ortgage foreclosure proceedings may be treated as analogous to **two separate** proceedings for res judicata purposes' because of their 'bifurcated nature[.]'"

PennyMac Corp. v. Godinez, 148 Hawai`i 323, 330, 474 P.3d 264, 271 (2020) (emphasis and some alterations in Godinez) (quoting Mortg. Elec. Registration Sys., Inc. v. Wise, 130 Hawai`i 17, 16, 304 P.3d 1192, 1198 (2013)).  Further, the Hawai`i Supreme Court

> has explained that a judgment of foreclosure "finally determines the merits of the controversy."  MDG Supply, Inc. v. Diversified Investments, Inc., 51 Haw. 375, 380, 463 P.2d 525, 528 (1969) (internal citations omitted).  Subsequent proceedings "are simply incidents to its enforcement."  Id. (internal citations omitted.)  Thus, "foreclosure cases are bifurcated into two separately appealable parts: (1) the decree of foreclosure and the order of sale, if the order of sale is incorporated within the decree, and (2) all other orders."  [Sec. Pac. Mortg. Corp. v.] Miller, 71 Haw. [65,] 70, 783 P.2d [855,] 858 [(1989)].  It is evident that orders confirming sale are separately appealable from the decree of foreclosure, and therefore fall within the second part of the bifurcated proceedings.  See id. (treating an appeal from an order confirming sale and for deficiency judgment as separate from an appeal from the foreclosure judgment); see also Eastern Savings Bank, FSB v. Esteban, 129 Hawai`i 154, 296 P.3d 1062 (2013) (treating an appeal from the judgment confirming the foreclosure sale as a separate matter from the judgment of foreclosure).

Wise, 130 Hawai`i at 16, 304 P.3d at 1197.

Thus, the Foreclosure Judgment was appealable.  Reyna filed an appeal from the Foreclosure Judgment, but the appeal was dismissed because the notice of appeal was untimely. [Kasten Decl., Exh. 12 (6/21/18 ICA order).]  Reyna did not file an application for a writ of certiorari to the Hawai`i Supreme

Court to seek review of the ICA's dismissal order.  See Haw. R. App. P. 40.1(a)(1) (stating an application must be filed within thirty days of the ICA's dismissal order).  The Foreclosure Judgment is therefore a final decision on the merits for purposes of *res judicata*.

>    **B.   Same Parties**

Reyna and PNC were parties to the Foreclosure Action. See Kasten Decl., Exh. 10 (Foreclosure Judgment).

As this district court has explained:

>    Claim preclusion requires that the parties to the second action are the same as, or in privity with, the parties to the first action. [Matter of Herbert M. Dowsett Tr.], 7 Haw. App. [640,] 646, 791 P.2d 398[, 402 (1990)].  Whether sufficient privity exists to bind a nonparty to a judgment is determined under the circumstances in each case as it arises.  Id.  Under Hawaii law, "the concept of privity has moved from the conventional and narrowly defined meaning of 'mutual or successive relationship[s] to the same rights of property' to 'merely a word used to say that the relationship between the one who is a party of record and another is close enough to include that other within the res adjudicata.'"  Id.  The party asserting claim preclusion must demonstrate that the interests of the nonparty were adequately represented and that the nonparty's rights were afforded proper protection in the prior action.   Id.

Pedrina, 906 F. Supp. at 1399 (some alterations in Pedrina). PNC obtained its interest in Reyna's Mortgage from MERS, as the nominee for the original lender, Meridian, and Meridian's successors and assigns.  See Kasten Decl., Exh. 1 (Mortgage) at

16

1-2; id., Exh. 2 (Assignment).  Thus, PNC and MERS are in

privity because of their successive relationship to the same

property rights.  The instant action involves the same parties

as the Foreclosure Action.

> **C.**  **Same Claims**

As this district court has previously explained:

> The Hawaii courts follow the Second
> Restatement's transactional view of "same claim"
> for purposes of claim preclusion.  Kauhane v.
> Acutron Company, Inc., 71 Haw. 458, 464, 795 P.2d
> 276 (1990).  Accordingly, to determine whether a
> litigant is asserting the "same claim" in a
> second action, Hawaii courts look to whether the
> claim arises out of the same transaction or the
> same series of connected transactions out of
> which the first action arose.  Id.; Restatement
> (Second) of Judgments § 24 (1982) [hereinafter
> "Restatement § 24"].  The claim extinguished by
> an action "includes all rights of the plaintiff
> to remedies against the defendant with respect to
> all or any part of the transaction, or series of
> connected transactions."  Restatement § 24.  This
> inquiry is made based on the facts of the
> transaction and does not depend on the number of
> substantive theories, or variant forms of relief
> flowing from those theories, that may have been
> available to the plaintiff; the number of primary
> rights that may have been invaded; or the
> variations in the evidence needed to support the
> theories or rights.  Id. at 463 n.6, 795 P.2d
> 276; Restatement § 24 comment at 197.

> ¶   Accordingly, a plaintiff cannot avoid the
> bar of claim preclusion merely by alleging
> conduct that was not alleged in his prior action
> or by pleading a new legal theory.  McClain v.
> Apodaca, 793 F.2d 1031, 1034 (9th Cir. 1986).
> All claims arising from a single injury must be
> raised in a single action or they will be barred
> by res judicata.  Silver v. Queen's Hospital, 63
> Haw. 430, 437, 629 P.2d 1116 (1981).  This is

> true even where some of the claims arise under
> state law and some arise under federal law.  Id.
> (actions under federal civil rights act and state
> conspiracy and antitrust law arising from a
> single injury should be raised in a single
> action). . . .

Pedrina, 906 F. Supp. at 1400-01.

The 11/4/19 Motion, which was filed jointly by Defendants, argued that: pursuant to the Rooker-Feldman doctrine, this Court lacked jurisdiction over all of Reyna's claims in the First Amended Complaint; and all of those claims were also bared by the *res judicata* doctrine.  [Mem. in Supp. of 11/4/19 Motion at 7-14.]  In the 5/8/20 Order, this Court dismissed some of Reyna's claims with prejudice, pursuant to the Rooker-Feldman doctrine, because those claims "essentially [sought] to undo the Foreclosure Decision (that is, to reverse the Foreclosure Judgment entered in the Foreclosure Action)." [5/8/20 Order at 11-12.]  This Court also noted that dismissal of those claims with prejudice was warranted based on the *res judicata* doctrine for the same reasons that the Rooker-Feldman doctrine applied.  [Id. at 13.]  However, as to the claims in the First Amended Complaint that correspond to Counts I, II, and III of the Second Amended Complaint, this Court ruled that dismissal was not warranted under either the Rooker-Feldman doctrine or the *res judicata* doctrine because they did not appear to "directly challenge the Foreclosure Judgment and, and

18

although related to, they [we]re not inextricably intertwined with the issues in the Foreclosure Action[.]"  [Id. at 12-13 (internal quotation marks omitted).]  The fraud claim (which was Count II of the First Amended Complaint), the quiet title claim (which was Count XII), and the slander of title claim (which was Count XIII) were dismissed, without prejudice, for failure to state a claim for reasons apart from the Rooker-Feldman doctrine or the res judicata doctrine.  [Id. at 15-17, 24-27.]

However, the allegations that Reyna added in Count I of the Second Amended Complaint, as compared to Count II of the First Amended Complaint, show that the claim does in fact seek to undo the Foreclosure Decision.  "The First Act of Fraud" challenges the transfer of Reyna's Note; [Second Amended Complaint at pgs. 7-8;] "[t]he Second Act of Fraud" challenges the filing of the Assignment with the BOC in 2011; [id. at pg. 8;] "[t]he Third Act of Fraud" and the first of two acts identified as "[t]he Fifth Act of Fraud" challenge PNC's initiation of the Foreclosure Action without clear proof of title; [id. at pgs. 8-9;] "[t]he Fourth Act of Fraud" challenges the filing of an affidavit by Judelene Nazareno in the Foreclosure Action;[7] [id. at pg. 8;] and the second of the two

_____

[7] PNC filed Ms. Nazareno's affidavit on July 9, 2015 in the Foreclosure Action.  It addressed the service of the Foreclosure
(. . . continued)

acts identified as "[t]he Fifth Act of Fraud" challenges whether Reyna was in default on the Note and First Mortgage, [id. at pgs. 9-10].  The additional allegations that Reyna included in paragraph 29 of the Second Amended Complaint address the actions of PNC's attorneys related to the loan assignment and foreclosure process.  Even viewing the record in the light most favorable to Reyna as the non-moving party responding to Defendants' Motions,[8] Reyna seeks to undo the Foreclosure Decision.  Thus, the remaining portions of Count I assert the same claims as the claims that were asserted in the Foreclosure Action.

Counts II and III incorporate all of the allegations in the preceding paragraphs of the Second Amended Complaint. [Id. at ¶¶ 35, 41.]  Thus, Counts II and III are also based upon the allegations in Count I that seek to undo the Foreclosure Decision.  Further, similar to a wrongful foreclosure claim, Reyna's quiet title claim and her slander of title claim, both of which are based upon Reyna's assertion that PNC did not have a right to foreclose, could have been brought in the Foreclosure

Complaint by certified mail on Wilmington.  [Kasten Decl., Exh. 14.]

[8] When a district court rules on a motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party.  Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013).

Action as counterclaims.  Cf. Bank of Am., N.A. v. Reyes-Toledo, 143 Hawai`i 249, 264, 428 P.3d 761, 776 (2018) ("a mortgagor should be able to assert a counterclaim for wrongful foreclosure based on the underlying facts of the pending foreclosure case"). Counts II and III therefore assert the same claims as the claims that were, or could have been, asserted in the Foreclosure Action.

### D.   Ruling

All three *res judicata* requirements are met with regard to all of Reyna's remaining claims against PNC and her only claim against MERS.[9]  Thus, the *res judicata* doctrine precludes Reyna from litigating the claims that she is attempting to pursue in this case.  There are no genuine issues of material fact for trial, and Defendants are entitled to judgment as a matter of law as to all of Reyna's remaining claims against them.  See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  Summary judgment is therefore granted in favor of PNC and MERS as to all of Reyna's remaining claims in this case.

---

[9] Although MERS did not raise the *res judicata* doctrine in its motion, this Court, in its discretion, has considered the *res judicata* effect of the Foreclosure Judgment on Reyna's claims against MERS.

In light of the ruling regarding the *res judicata* effect of the Foreclosure Judgment, it is not necessary to address the remaining arguments in the PNC Motion and the MERS Motion.  Further, because there are no remaining claims in this case, Reyna's Motion is denied.

## CONCLUSION

For the foregoing reasons: Reyna's Motion for Summary Judgment, filed September 9, 2020, is DENIED; PNC's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, filed September 16, 2020, is GRANTED IN PART AND DENIED IN PART; and MERS's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, filed September 16, 2020, is GRANTED IN PART AND DENIED IN PART. Specifically,

-Defendants' Motions are granted, insofar as judgment on the pleadings is granted in favor of Defendants as to the portions of Count I based upon the alleged sixth and seventh acts of fraud; those portions of Count I are DISMISSED WITH PREJUDICE;

-Defendants' Motions are denied, insofar as they seek judgment on the pleadings as to Reyna's other claims;

-the PNC Motion is granted, insofar as summary judgment is granted in favor of PNC as to all of Reyna's remaining claims against PNC, because Reyna is precluded from litigating those claims based on the *res judicata* doctrine; and

-the MERS Motion is granted, although on another ground than what was raised in the MERS Motion, because summary judgment is granted in favor of MERS as to Reyna's

22

remaining claim against MERS, based on the *res judicata*
doctrine.

There being no remaining claims in this case, the Clerk's Office

is DIRECTED to enter judgment in favor of Defendants as to all

of Reyna's claims in her Second Amended Complaint for:

(1) Fraud, (2) Quiet Title, and (3) Slander of Title, filed

June 3, 2020.  Judgment shall be entered on **February 18, 2021**,

unless Reyna files a timely motion for reconsideration of this

Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 3, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

HERMA BARBARA MEDINA REYNA VS. PNC BANK, N.A., ET AL; CV 19-
00248 LEK-RT; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE FOR
SUMMARY JUDGMENT